IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JUSTIN T. DAVIDSON, #323116, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO. 3:20-CV-80-WHA-CSC ) |
| STEVE JOHNSON, et al., | ) ) |
| Defendants. | ) |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff Justin T. Davidson, an inmate proceeding *pro se*, initiated this 42 U.S.C. § 1983 action on January 29, 2020.[1] *See* Doc. 1. Plaintiff alleges that Defendants Steve Johnson and Paul Weatherly were deliberately indifferent to his medical needs while detained at the Russell County Jail in January 2020. *See id.* Defendants filed a Special Report (Doc. 17), two supplements (Docs. 19, 25), and supporting evidentiary materials opposing Plaintiff's claims, and Plaintiff filed a response (Doc. 23). Upon consideration of the parties' submissions, and for the reasons set forth below, the undersigned RECOMMENDS that Defendants' Special Report be construed as a motion to dismiss; the motion be GRANTED; and this case be DISMISSED for Plaintiff's failure to exhaust his administrative remedies prior to filing suit.

---

[1] Under the prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing. *See Garvey v. Vaughn*, 993 F.2d 776, 783 (1993). Absent evidence to the contrary, the Court must "assume that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).

**I.     THE COMPLAINT**

The Complaint alleges that, on January 8, 2020, Defendant Weatherly placed Plaintiff in a holding cell that was "badly damaged and unlevel" and "had a large hole where [Plaintiff's] walker could get stuck" despite knowing that Plaintiff "was a fall risk." Doc. 1 at 2. On January 9, 2020, Officer Osburn—who is not a named defendant in this action—and another inmate "observed [Plaintiff's] walker get caught in the drain and watch[ed] [him] fall." *Id.* Plaintiff alleges that he requested medical attention but never received any. *Id.* He further alleges that Defendant Johnson, the director of the Jail, allowed the holding cell to be used for medical observation despite "know[ing] of the dangers" of the cell. *Id.* at 3. Based on these allegations, Plaintiff claims he was subjected to cruel and unusual punishment in violation of the Eighth Amendment.[2] As relief, he seeks monetary damages, among other things. *Id.*

**II.    ISSUE BEFORE THE COURT**

In their Special Report, Defendants move to dismiss this action for Plaintiff's failure to exhaust his administrative remedies prior to filing this lawsuit.[3] Doc. 17. They state—

---

[2] Because Plaintiff was a pretrial detainee at the time of the events alleged in the Complaint, the Fourteenth Amendment, rather than the Eighth Amendment, applies. *See Tittle v. Jefferson Cty. Comm'n*, 10 F.3d 1535, 1539 n.3 (11th Cir. 1994) ("It is well settled that the Eighth Amendment prohibitions against cruel and unusual punishment do not apply to pretrial detainees."); *Cagle v. Sutherland*, 334 F.3d 980, 985 (11th Cir. 2003) ("Because [the plaintiff] was a pretrial detainee, his section 1983 claims are based on the due process clause of the Fourteenth Amendment."). However, "the standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments," and "decisional law involving prison inmates applies equally to cases involving . . . pretrial detainees." *Keith v. DeKalb Cty., Georgia*, 749 F.3d 1034, 1044 n.35 (11th Cir. 2014) (citations omitted).

[3] Defendants request that the Court treat their Special Report as a Motion for Summary Judgment. Doc. 17 at 20. However, "an exhaustion defense . . . should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant v. Rich*, 530 F.3d 1368, 1374–75 (11th Cir. 2008) (internal quotations and citations omitted).

and provide evidentiary materials to support—that the Russell County Jail has an inmate grievance procedure in place that was made available to Plaintiff, but which Plaintiff nevertheless failed to follow. *Id.* at 9-11.

In response, Plaintiff does not dispute that he failed to follow the Jail's procedure. However, he states that the procedure "was followed to the best [of his] ability" considering that the kiosk at which he submitted his grievances "[did] not have a feature which allow[ed] [him] to appeal a grievance." Doc. 23 at 2. Instead, it only had the option "to close or reply" to a grievance. *Id.* Additionally, Plaintiff alleges that he filed a grievance regarding the allegations in the Complaint that was "answered by Chief Alexander." *Id.*

## III.   THE EXHAUSTION REQUIREMENT

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a). Exhaustion of all available administrative remedies is a mandatory precondition to suit. *See Booth v. Churner*, 532 U.S. 731, 739 (2001). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), and it may not be waived by the Court, *see Booth*, 532 U.S. at 741 n.6.

To properly exhaust one's administrative remedies, an inmate must "us[e] all steps" in the administrative process and comply with all "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). Thus, if an inmate has filed "an

3

untimely or otherwise procedurally defective administrative grievance or appeal," he has not properly exhausted his administrative remedies. *Id.* at 83–84. If an inmate has failed to properly exhaust his available administrative remedies before filing suit, the Court *must* dismiss the action. *See Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000).

Deciding a motion to dismiss for failure to exhaust administrative remedies involves two steps. *See Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008).

> First, the [C]ourt looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.

*Id.* (citing *Bryant*, 530 F.3d at 1373–74). "If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the [C]ourt then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* (citing *Bryant*, 530 F.3d at 1373–74, 1376). "Once the [C]ourt makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083. "The defendants bear the burden of proving that the plaintiff has failed to exhaust." *Id.* at 1082 (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)).

**IV.   DISCUSSION**

First, the Court must consider the factual allegations in Defendants' Special Report and Plaintiff's response and, if they conflict, take Plaintiff's version of the facts as true. *See Turner*, 541 F.3d at 1082. Defendants allege that the Jail has an inmate grievance procedure in place to which Plaintiff had access and which Plaintiff did not follow. Doc.

4

17 at 6–8. Specifically, they allege that an inmate who is unsatisfied with a response to his grievance may appeal the grievance up the chain of command to Sheriff Heath Taylor. *Id.* They claim, however, that although Jail officials responded promptly to each of Plaintiff's grievances, Plaintiff never submitted an appeal to Sheriff Taylor. *Id.*

In response, Plaintiff does not dispute the existence of the Jail's inmate grievance procedure; that he had access to the procedure; or that he failed to follow the procedure by appealing a grievance up the chain of command to Sheriff Taylor. Instead, he alleges that "the kiosk [on which he filed grievances] does not have a feature which allows you to appeal a grievance." Doc. 23 at 2. He also alleges that Chief Alexander responded to one of his grievances. *Id.* Plaintiff's allegation that Chief Alexander answered one of his grievances does not demonstrate proper exhaustion, as it is undisputed that proper exhaustion necessitates that a grievance be submitted even higher up the chain of command to Sheriff Taylor. *See* Doc. 17 at 7. However, Plaintiff's allegation that the grievance kiosk did not allow him to appeal a grievance, when taken as true, is sufficient to overcome dismissal at the first step of the Court's analysis. *See Turner*, 541 F.3d at 1084 ("A remedy has to be available before it must be exhausted, and to be available a remedy must be capable of use for the accomplishment of [its] purpose.") (internal quotations and citation omitted).

Thus, the Court must now make specific factual findings to resolve the factual dispute of whether Plaintiff had the ability to appeal a grievance. *See Turner*, 541 F.3d at 1082; *see also Trias v. Fla. Dep't of Corr.*, 587 F. App'x 531, 535 (11th Cir. 2014) ("The [district] judge properly may consider facts outside of the pleadings to resolve a factual

5

dispute as to exhaustion where doing so does not decide the merits, and the parties have a sufficient opportunity to develop the record.") (citation omitted). Upon careful review of the parties' assertions and the unrefuted evidence, the Court finds that he did.

First, the Inmate Rules and Regulations handbook to which Plaintiff had access explicitly states:

> If you are not satisfied with the first answer to your grievance, you may send an appeal to next higher command level (Assistant Detention Director) within 15 days of the first response. You may continue to send it through the chain of command, up to the sheriff, who will make the final decision on any appellate issues involving grievance.

Doc. 19-1 at 12. Second, the grievance kiosk contains a tab that allows an inmate to choose the individual to whom the grievance will be sent. Docs. 17-1 at 5; 17-2 at 5; 25-1 at 3. Finally, Defendant Weatherly averred under oath that an inmate may appeal a response by either replying to the response itself—Plaintiff admits there is a "reply" option on the kiosk—stating his intent to appeal or by filing a new grievance stating his wish to appeal. Doc. 25-1 at 3. He further averred that an inmate is not required to specifically address the next individual in the chain of command; instead, if an inmate simply states his intent to appeal, the appeal will be assigned to the next individual in the chain of command. *Id.* Thus, none of the evidence before the Court supports a finding that administrative remedies were unavailable to Plaintiff for purposes of exhaustion.

The Supreme Court has recognized three circumstances in which an administrative remedy, although officially on the books, is considered unavailable to an inmate. *See Ross v. Blake*, 578 U.S. 632, 643 (2016). First, a remedy is unavailable when "it operates as a simple dead end" because prison officials are "unable or consistently unwilling to provide

any relief to aggrieved inmates." *Id.* Second, a remedy is unavailable if the grievance process is "so opaque that it becomes, practically speaking, incapable of use." *Id*. This occurs when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 644. Finally, a remedy is unavailable if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* None of these circumstances apply in this case, as there is no evidence that Jail officials were unable or unwilling to provide relief; that an ordinary prisoner could not understand the relatively simple grievance process clearly set forth in the handbook; or that anyone hindered Plaintiff from taking part in the grievance process.

Indeed, notably absent from the record is any evidence that Plaintiff ever *attempted* to submit an appeal up the chain of command. Plaintiff does not even allege such an attempt; he merely alleges that he could not submit an appeal because the kiosk did not have an appeal "feature." Doc. 23 at 2. However, the Court does not find the singular fact that the kiosk lacked a button specifically labeled "appeal" to render the appeal process unavailable to Plaintiff. As noted above, the handbook plainly provides that Plaintiff could "send an appeal" up the chain of command, and the kiosk permitted Plaintiff to choose the individual to whom he wished to send correspondence. Had Plaintiff made any effort to follow this procedure, either by replying to a particular response or filing a new grievance indicating his wish to appeal, an appeal would have been assigned to the appropriate recipient.

Thus, Defendants' unrefuted evidentiary materials reflect that Plaintiff had the ability to complete the requisite grievance procedure while confined in the Russell County Jail. Nonetheless, the evidence makes clear—and Plaintiff does not dispute—that he did not do so. Therefore, Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit, and this case must be dismissed.

## V. CONCLUSION

Accordingly, based on the foregoing, the undersigned RECOMMENDS that:

1. Defendants' Special Report (Doc. 17) be construed as a motion to dismiss;

2. the motion be GRANTED; and

3. this case be DISMISSED for Plaintiff's failure to exhaust his administrative remedies prior to filing suit.

It is further ORDERED that, on or before **October 11, 2022**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered by the Court. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by

the District Court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1. *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 26th day of September, 2022.

/s/ Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE